IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## DWIGHT MILLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Haywood County**
**No. 2401     J. Weber McCraw, Judge**

---

**No. W2014-02093-CCA-R3-PC  -  Filed June 24, 2015**

---

Petitioner, Dwight Miller, was convicted of first degree murder in 2001 and was sentenced to life in prison. Following an unsuccessful direct appeal, he now challenges his conviction and sentence, claiming ineffective assistance of counsel for failure to call three potential alibi witnesses at trial. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Justin P. Jones (on appeal) and Michael J. Banks (at post-conviction hearing), Brownsville, Tennessee, for the appellant, Dwight Miller.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald M. Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

#### A.  Trial

Following a 1996 trial, petitioner was convicted of the first degree murder of Donald Rice and was sentenced to life in prison. On direct appeal, this court reversed the judgment of the trial court and remanded the case for a new trial. *See State v. Dwight Miller*, No. 02C01-9708-CC-00300, 1998 WL 902592 (Tenn. Crim. App. Dec. 29, 1998). On retrial, he was again convicted and sentenced to life in prison. In the appellate

opinion affirming his conviction and sentence on retrial, this court recited the following facts:

> In the early morning hours of April 20, 1995, the appellant and Donald Rice were sitting in their cars, which were parked driver's window to driver's window, outside a housing project in Brownsville, Tennessee. Both vehicles were burgundy or maroon with four doors. Clement Harris, who was sitting outside the housing project at the time, heard the appellant and Mr. Rice talking. Mr. Harris knew the appellant from school and was able to recognize his voice when he heard him speak with Mr. Rice. After the conversation ended, Mr. Harris saw Mr. Rice begin to back his car away from the area. As Mr. Rice backed up, a gun was fired from the appellant's car, fatally shooting Mr. Rice in the face. After the shooting, the appellant got out of his car, got into Mr. Rice's car, pushed Mr. Rice over, and drove Mr. Rice's car away. A passenger in the appellant's car slid over to the driver's seat and followed the appellant. Mr. Rice's body was subsequently discovered in a ditch, and his abandoned car was later found by the police.

> On the day prior to the murder, Nina Champion, an acquaintance of the appellant, saw shotgun shells in the backseat of the appellant's car and a shotgun in the trunk of his car. Officer Johnny Blackburn of the Brownsville Police Department testified that he searched the appellant's bedroom after the murder and found a shotgun that smelled of gunpowder as well as a live, red 12-gauge shotgun shell on a night table, and a spent, red 12-gauge shotgun shell in a shoe under the table. The shells were of the same type and size shot found in the body of Mr. Rice.

*State v. Dwight Miller*, No. W2001-03095-CCA-R3-CD, 2004 WL 115374, at *1 (Tenn. Crim. App. Jan. 14, 2004), *perm. app. denied* (Tenn. May 10, 2004).

### B. Procedural History

Petitioner filed his first petition for post-conviction relief on February 22, 2005. For reasons that are unclear from the record, the post-conviction court did not appoint counsel and order the State to respond to the allegations until January 7, 2009. Counsel withdrew, and new post-conviction counsel was appointed, who filed an amended petition on May 20, 2009. In August 2010, the post-conviction court granted a delayed appeal and stayed petitioner's post-conviction proceedings pending disposition of the appeal. Although represented by counsel, petitioner filed a subsequent amended petition on April 10, 2014, which added the claim of ineffective assistance of counsel for failure to call three alibi witnesses that is the subject of this appeal. The post-conviction court conducted an evidentiary hearing on September 19, 2014.

## C. Post-Conviction Evidentiary Hearing

At the evidentiary hearing, petitioner called Rosa Carney as his first witness. Ms. Carney testified that in April 1995, she spoke with Deputy Billy Blackwell regarding petitioner's involvement in a murder. She recalled telling Deputy Blackwell that petitioner had been at her house around "dusk dark" on the day in question. She said that she was sick and resting in her bed when petitioner came in, "hit [her] across [her] leg[,] and told [her] to get up out of bed." She informed appellant that she was sick and that she had to leave work early because of her illness. Ms. Carney stated that petitioner asked her if she needed anything and then asked her children if they wanted anything. She said that petitioner took her children to purchase "snack stuff." She did not see petitioner when he returned the children to her home, but she said that he had visited a neighbor who lived across the street.

When asked whether she recalled exactly what date this exchange occurred, Ms. Carney answered, "I do know it was that same - no - the day after when Mr. Blackwell called me." She acknowledged that if she said April 19, 1995, in a previous statement, that would have been correct. She said that at the time, she lived in the Stanton housing project, which was located around twelve to thirteen miles from Brownsville. Ms. Carney acknowledged that she neither testified at petitioner's trial nor received a subpoena to testify. She recalled that she learned of petitioner's murder charge when Deputy Blackwell telephoned her house. Ms. Carney's daughter answered the telephone and later relayed the message to Ms. Carney that Deputy Blackwell wanted to speak with her. She denied having spoken with anyone associated with petitioner's defense.

On cross-examination, the State asked Ms. Carney if it could have been "Johnny Blackburn" instead of "Billy Blackwell" who contacted her, but she adhered to her testimony that it had been Billy Blackwell. She did not remember speaking with Clifford Warden from the district public defender's office. She acknowledged that she would not have been able to confirm whether petitioner was at her home around 12:00 or 12:30 a.m. because she was in bed.

George Edward Liggons testified next and said that he testified in one of petitioner's trials. He recalled that he and petitioner rode to and from work together on April 19, 1995, and that he testified to that fact in court. Mr. Liggons stated that they worked construction at the time and that he took his tools with him wherever he went. He recalled that the trunk of petitioner's car was completely empty and clean, as was the back seat. They remained at work together the entire day. When they left, petitioner's vehicle was stalling intermittently, so the drive home was longer than usual. Mr. Liggons estimated that he arrived home around 5:00 p.m. that day and that it was still light outside. He said that if someone testified that they saw a shotgun and shells in

petitioner's car during the day on April 19, it would have been after petitioner took Mr. Liggons home because there was nothing in the car except his tools. Mr. Liggons did not recall receiving a subpoena to testify at appellant's 2001 trial.

On cross-examination, Mr. Liggons said that it could have been 5:30 or 6:00 p.m. when he arrived home on the day in question but that he would not have known what happened after appellant left his home. He acknowledged that he was at the courthouse during petitioner's second trial but that he was not called to testify. He recalled that there was a bomb threat in the building that day.

Petitioner called trial counsel as his next witness. She had been employed with the district public defender's office and had been appointed to represent petitioner before his 2001 trial. She recalled that because the 2001 trial was a retrial, they had the transcript of the 1996 trial and knew what the State's theories would be. Collectively, the office staff thought that the State's case depended largely on the testimony of Clement Harris, the eyewitness who saw petitioner shoot the victim. Trial counsel testified that because Mr. Harris held fast to his story, they tried to develop an alibi. In doing so, they spoke with Ms. Carney and others. Petitioner was well-liked, and many people wanted to help him, but they "just never could pin down anyone who could say that they saw [petitioner] at the time that this shooting was to have occurred," which was 1:00 to 2:00 a.m. on April 20.

Trial counsel recalled that she called Nina Champion as a witness at the preliminary hearing. Ms. Champion testified that she saw a shotgun in petitioner's trunk and shells in his back seat on the day in question. However, before the 1996 trial, Ms. Champion was murdered. Accordingly, her testimony from the preliminary hearing was entered into evidence. Trial counsel was aware that Mr. Liggons would have testified that he saw neither of those items on the day in question but recalled that Ms. Champion's testimony referred to later in the day, which would have allowed petitioner time to acquire the items and place them in his car. Trial counsel confirmed that Mr. Liggons was under subpoena in 2001 and appeared for the first day of trial but that after the bomb threat cleared the courtroom, he did not come back.

Trial counsel testified that she considered calling petitioner's mother, Lucille Miller, as a witness but that Ms. Miller's memory had declined substantially between the 1996 trial and the 2001 trial. Ms. Miller could have testified that petitioner lived with her and painted a room for her on the night in question. Trial counsel explained that she did not call Ms. Carney as a witness because the timeline she provided allowed enough time for petitioner to have committed the murder. She recalled that Mr. Harris testified that he saw petitioner around 7:00 p.m. on Fairgrounds Street in Brownsville. However, she disagreed that Ms. Carney could have refuted this testimony because "as much as she tried, [she] couldn't say exactly when she was awakened."

-4-

Trial counsel stated that she filed a motion for a new trial in petitioner's case and that it was denied. She acknowledged that he had filed a complaint against her with the Board of Professional Responsibility. In her response to the board, she wrote that she "had so many clients[,] it had become increasingly difficult to keep up with deadlines and represent clients in the manner that they deserved." She said that she failed petitioner because she filed the motion for a new trial late.

On cross-examination, trial counsel elucidated that when she said she "failed" petitioner, she meant that her actions deprived him of a full appeal. She clarified that at the trial level, she and others in her office investigated all possible alibi witnesses and other theories. During the investigation, they received information about a "related" incident wherein someone else was angry with the victim. However, she was unable to further develop this issue.

Trial counsel recalled that following the bomb threat, the trial court assured her that if necessary, it would send someone to retrieve Mr. Liggons. The following day, however, the court told her that they did not "have that kind of time." Faced with the decision whether to read Mr. Liggons' prior testimony into the record, trial counsel decided against it because his testimony had not been very "persuasive." She could not "rule out that both" Mr. Liggons and Ms. Champion could have been correct.

The State called Investigator Shawn Williams with the Haywood County Sheriff's Department as a witness. He was the investigating officer in petitioner's case. As part of the investigation, he interviewed petitioner. In his statement, petitioner indicated that he visited the projects in Stanton, left around 12:20 a.m., and went home.

The post-conviction court took the matter under advisement and denied relief by written order dated September 19, 2014. This appeal follows.

## II. Analysis

In this appeal, petitioner claims ineffective assistance for failure to call alibi witnesses Rosa Carney, George Liggons, and Lucille Miller.[1] In his summary of the argument, petitioner also asserts that "under these specific allegations and the cumulative

---

[1] Petitioner also alleges that under the "totality of the circumstances," trial counsel rendered ineffective assistance in several ways, including failure to file a motion for a new trial, failure to "adequately represent" petitioner, failure to file necessary motions, and failure to interview and investigate necessary alibi witnesses. Petitioner has not stated with specificity any particular issue that he claims should have been raised on direct appeal. Neither has he listed or proven a specific motion, aside from the motion for a new trial, that trial counsel failed to file.

effect, trial counsel's performance was deficient" and petitioner suffered prejudice therefrom.

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that

his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### B. Failure to Call Alibi Witnesses

#### 1. Rosa Carney

In denying relief on this claim, the post-conviction court made the finding of fact that Ms. Carney said that she had seen petitioner "much earlier in the day of the killing." The court also concluded that Ms. Carney's testimony was insufficient as an alibi and would not have changed the outcome of the trial.

If she had been called as a witness at trial, Ms. Carney could have established petitioner's whereabouts around "dusk dark" on the evening preceding the early morning murder of the victim. However, by her post-conviction testimony, it is evident that she could not have provided an alibi for petitioner during the time of the murder because she

was in bed asleep. Trial counsel indicated that she spoke with Ms. Carney to try to establish an alibi for petitioner, but she could not "pin down anyone" who could have provided an alibi for petitioner at the time of the murder, which was 1:00 to 2:00 a.m. the following morning.

Trial counsel investigated Ms. Carney as a possible alibi witness, interviewed her, and then chose as a matter of strategy not to call her as a witness. Because Ms. Carney could offer no assistance as an alibi witness at the time of the murder, trial counsel's failure to call Ms. Carney as a witness at trial was not deficient, and petitioner suffered no prejudice therefrom.

## 2. George Liggons

In denying relief on this claim, the post-conviction court found that Mr. Liggons "could only testify that he had been with [petitioner] during the day of the killing yet did not see a gun or gun shells in [petitioner's] car[,] [but] [a]gain, this was many hours before the shooting." The court also concluded that Mr. Liggons' testimony did not make a difference at petitioner's first trial and likely would not have made a difference at the second trial had he testified.

At the post-conviction hearing, Mr. Liggons testified that he was with petitioner at work all day on April 19, 1995, until petitioner drove him home. Mr. Liggons arrived home sometime between 5:00 and 6:30 p.m., but he clarified that it was still light outside. Although he was in and around petitioner's vehicle all that day and observed no weapon or shotgun shells inside of it, several hours elapsed between that time and the murder the following morning. Speaking to any discrepancy between Mr. Liggons' testimony and that of Nina Champion, trial counsel surmised that the lapse in time did not foreclose the possibility that both Mr. Liggons and Ms. Champion were correct in their testimony. For that reason, trial counsel elected not to read in Mr. Liggons' testimony from the first trial when he failed to return to the courtroom on the day following the bomb threat. She characterized his testimony as not "persuasive."

We must note that in this court's decision on direct appeal from petitioner's first trial, this court wrote that Ms. Champion "saw a shotgun in the trunk of the [petitioner's] car *shortly* before the murder." *State v. Dwight Miller*, 1998 WL 902592, at *1 (emphasis added). This is consistent with trial counsel's supposition that both Ms. Champion and Mr. Liggons had been correct in their testimony. Again, trial counsel investigated Mr. Liggons as a possible alibi witness simply to refute petitioner's possession of a shotgun and ammunition. Mr. Liggons testified at the first trial, which resulted in a conviction. We must surmise that as trial counsel opined, his testimony was not "persuasive" in this regard. Moreover, trial counsel's strategic decision not to read in

Mr. Liggons' prior testimony was considered and reasoned. Her performance was not deficient, and petitioner suffered no prejudice as a result.

### 3. Lucille Miller

The post-conviction court stated that petitioner's mother, Lucille Miller, could have testified that petitioner was at her home earlier in the day and that he had painted a room for her. The court noted, "Again, this event was many hours before the shooting and would not have served as an alibi. Her testimony, if presented, would not have changed the outcome."

Trial counsel testified that while Ms. Miller might have been able to provide some alibi information, her memory had declined substantially between the first trial and the second trial. Trial counsel exercised the strategic decision not to call her as a witness. Moreover, we note that Ms. Miller did not testify at the post-conviction hearing. When a post-conviction petitioner alleges ineffective assistance of counsel for failure to investigate or present a certain witness in support of his defense, the petitioner should present that witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

### C. Cumulative Effect

Couched in terms of "the totality of the circumstances" and "cumulative effect," petitioner attempts to garner relief from his conviction and sentence on the basis of trial counsel's response to the Board of Professional Responsibility. First, because we find no error with respect to trial counsel's failure to present any of the three alibi witnesses, no cumulative error ensues. Second, with regard to trial counsel's response to the Board of Professional Responsibility complaint, she clarified that she specifically meant that her actions had deprived petitioner of a full appeal but that she and her staff diligently represented petitioner at the trial level. Moreover, pursuant to the post-conviction court's granting of a delayed appeal, petitioner's case was subjected to full appellate review of the issues raised in trial counsel's late-filed motion for a new trial. *See State v. Dwight Miller*, No. W2011-00447-CCA-R3-CD, 2013 WL 324401 (Tenn. Crim. App. Jan. 28, 2013), *perm. app. denied, designated not for citation* (Tenn. June 13, 2013). Therefore, petitioner suffered no prejudice by trial counsel's failure to timely file the motion for a new trial. He is not entitled to relief.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE